## CHASTAIN et al. v. MAULDIN et al.

No. 7480.

Court of Civil Appeals of Texas. Austin.

Sept. 25, 1930.

Rehearing Denied Oct. 22, 1930.

236

R. E. Lee, of Brownwood, for appellants.

Wilkinson & Wilkinson, of Brownwood, for appellees.

McCLENDON, C. J.

By this suit appellants (resident taxpayers in Panther Creek common school district No. 7, in Brown county, and patrons of the school therein) sought to enjoin the trustees of Grosvenor common consolidated high school district (group No. 5) in said county from removing the school building belonging to Panther Creek district from its location in said district to the Grosvenor district. A temporary injunction was granted, which upon final hearing was dissolved, and the cause dismissed. The appeal is from this judgment.

The facts as found by the trial court, in substance, follow: April 26, 1929, the county board of school trustees of Brown county, acting under chapter 19a of title 49, arts. 2922a–2922l, R. S. 1925, made an order grouping the Panther Creek and two other districts with Grosvenor common school district No. 6 for high school purposes. Prior thereto Panther Creek district had taught all elementary grades and Grosvenor district had taught and is still teaching all elementary grades and high school grades as well. Prior to the grouping order, the trustees of all the grouped districts, together with the citizens interested, met to discuss the situation, and agreed that upon forming the high school district all elementary students from Panther Creek district would attend the Grosvenor school and would be furnished transportation by the trustees of the high school district, and so long as such transportation was furnished, no elementary school would be conducted in the Panther Creek district; such school, however, to be resumed whenever such transportation was not furnished; and that the consolidated district would employ a teacher with whom the Panther Creek trustees had made a tentative contract for the following scholastic year. At the time of the grouping order, this agreement, ratified by the county school superintendent, was placed before the county school trustees, and for this reason no arrangement for further maintaining the elementary school at Panther Creek was made. The average attendance at the Panther Creek school during the last preceding session was as much or more than twenty elementary pupils, and the total enrollment twenty-eight. No action was ever taken by the county board relative to abolishing Panther Creek elementary school, nor was any vote ever taken upon that question, but no teacher was employed and no attempt made to open any school, and all the elementary pupils of said Panther Creek district are attending and have enrolled in the elementary department of the Grosvenor school, and all or practically all of such pupils are being furnished bus transportation by the trustees of the Grosvenor high school district. On November 14, 1929, subsequent to the filing of this proceeding, the trustees of Grosvenor high school district formally transferred all pupils of Panther Creek district to the Grosvenor district. About October 20, 1929, the trustees of the Grosvenor high school district were preparing to and about to move the Panther Creek schoolhouse to the Grosvenor district to supplement the housing facilities there; whereupon a temporary injunction was granted. The Panther Creek schoolhouse is about 3½ miles from the Grosvenor schoolhouse, and the average distance of the elementary students of the former from the latter is about 3½ miles, some living within 1 mile and some as far away as 7 miles.

Upon these fact findings the trial court concluded as a matter of law: "That the plaintiffs having consented and agreed to the closing of said Panther Creek school and accepted the transfer of the elementary pupils of said district to Grosvenor, and accepted the school facilities of Grosvenor are not in equity entitled to have injunction prohibiting the defendants from removing said house."

The appeal presents two questions: First, whether the district court has jurisdiction to grant the injunction until appellants have exhausted their remedy by appeal (R. S. art. 2656) to the state superintendent of public instruction; and, second, whether the trial

court properly denied the relief sought upon the ground stated.

█ We have reached the conclusion that the court has jurisdiction and the relief was improperly denied. Generally speaking, the administration of the public school laws of this state are finally vested in the superintendent of public instruction, and where questions involving the proper administration of those laws are involved the courts are without jurisdiction until after appeal to the state superintendent. Jennings v. Carson (Tex. Com. App.) 220 S. W. 1090.

There are, however, certain exceptions to this general rule, which have been applied in the following classes of cases:

█ First. Those involving the constitutionality of some statute under which a school board purports to act. McPhail v. Tax Collector (Tex. Civ. App.) 280 S. W. 260 (error refused); Henderson v. Miller (Tex. Civ. App.) 286 S. W. 501; Stinson v. Graham (Tex. Civ. App.) 286 S. W. 264; Adams v. Miles (Tex. Civ. App.) 300 S. W. 211.

█ Second. Those in which no statutory authority is given for the act sought to be enjoined. Adams v. Miles, supra.

█ Third. Those in which property or funds belonging to the school district are about to be diverted from their proper use or purpose. Martine v. School District, 115 Tex. 145, 277 S. W. 78; Warren v. School District, 116 Tex. 183, 288 S. W. 159; Walker v. Walker (Tex. Civ. App.) 241 S. W. 524, 525; Dallas v. Mosely (Tex. Civ. App.) 286 S. W. 497, 499 (error granted).

In the Martine Case the Supreme Court, in refusing a writ of error, said: "We do not doubt the jurisdiction of the district court over a suit to prevent the improper use of school property."

The following quotation is from Dallas v. Mosely, supra, which was affirmed in an opinion by the Commission of Appeals, 17 S.W.(2d) 36:

"The petition in the instant case does not charge an abuse of discretion that could be legally exercised by the board of education, but charges that doing of acts beyond its power and concerning which it had no discretion, and that, in furtherance of such unlawful acts, it is diverting public money, coming into its possession for a special purpose. We do not believe it was the intention of the Legislature in the above-quoted enactment to close the door of the courts to taxpayers in cases of misapplication of public school money by public officers, charged with its proper expenditure, until the slow processes of appeal have been perfected to the state superintendent of public instruction and the state board of education, who are not vested with judicial powers. We think the appeal authorized by the said statute is from purely administrative matters in the conduct of the schools by boards of education."

█ If we are correct in the conclusion expressed below that the trustees of the Grosvenor district had no authority to remove the school building from the Panther district, then we are clear in the view that the district court has jurisdiction to enjoin the action, independently of whether an appeal has been taken from the action or threatened action of the Grosvenor board.

█ In the McPhail Case above, Judge Looney in holding constitutional the provisions of chapter 19a, title 49, sets forth very clearly the purposes and effect of that legislation. As there pointed out, the grouping provided for does not have the effect of abolishing the several districts in the group. See also Limestone Board v. Wilson (Tex. Civ. App.) 5 S.W.(2d) 805. It merely groups them for high school purposes and places the grouped board in charge of all of the schools in the district, thus abolishing the several district boards. No action of any character was taken which either attempted or had the effect of abolishing the Panther Creek district, and under the facts as found by the court (that the average daily attendance was 20 or more) the district could not have been abolished or consolidated with any other district without a vote of the taxpayers, which was not had. R. S. art. 2922f. The trustees of the grouped district were invested with the power and charged with the duty of conducting schools and of administering all school property and funds of all the districts within the boundaries of the consolidated districts. But they did not have the right to divert property or funds of one district to another, or to the grouped district. This is clearly the holding in the McPhail Case. It follows that they did not have the power to remove the school building of the Panther Creek district to the Grosvenor district, as that would have been a diversion of the property from its proper purpose and object. The only consolidation affected by the grouping was that of the funds collected from taxation for general maintenance. The ownership of school buildings of the several districts remained the property of those districts and could not be divested or impaired by the trustees of the grouped district. We believe and so hold that in attempting to remove the school building the trustees were about to perform a wholly unauthorized act.

█ The agreement found by the court we believe did not estop appellants from asserting their right to have the school building remain in the Panther Creek district. It did not refer to removal or disposition of the school building; and the arrangement by its express terms was temporary and contingent upon funds sufficient to provide transportation by bus for all the scholastics in the Pan-

ther Creek district. Whether such funds will continue to be available, or whether the trustees might find it otherwise advisable to discontinue transportation services, are matters for the future. The testimony clearly showed that the patrons of the Panther Creek school only consented to the arrangement upon the expressed promise that the school would be resumed if and when for lack of funds or otherwise transportation was not furnished. We do not think the taxpayers and patrons of the Panther Creek district by this agreement surrendered any right to have the school building remain in that district for use whenever the contingency might arise which would make it necessary to re-establish their school.

The point is made in appellees' brief that the building may be returned or a new one erected whenever the necessity arises. The trustees of the grouped district have the management and control of the building in question, and we do not hold that they are without authority under proper safeguards for its return or replacement to remove it temporarily to the Grosvenor district. That question, however, is not presented by the pleading or proof before us. The case as made by the record presents only the question of the power of the Grosvenor trustees to convert the school building of the Panther Creek district. The trial court's judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

BAUGH, J., did not sit in this case.